734 P.2d 235

George PASSINO, Plaintiff-Appellant,

v.

CASCADE STEEL FABRICATORS,
INC., an Oregon Corporation,
Defendant-Appellee.

No. 9160.

Court of Appeals of New Mexico.

Aug. 12, 1986.

Certiorari Quashed March 17, 1987.

William E. Snead, Tanya L. Scott, Ortega & Snead, P.A., Albuquerque, for plaintiff-appellant.

Mary E. McDonald, Sutin, Thayer & Browne, Santa Fe, for defendant-appellee.

## OPINION

ALARID, Judge.

This is an interlocutory appeal from a post-default order of the district court which allowed defendant Cascade Steel Fabricators, Inc. (Cascade) to present evidence to establish its proportionate share of the damages suffered by plaintiff George Passino (Passino). This order contained language allowing the parties to seek an immediate appeal. On March 21, 1981, Passino sought permission for an interlocutory appeal, which permission was granted. On appeal, he raises a single issue alleging that the trial court erred in allowing Cascade to present evidence regarding its relative culpability at a hearing on damages. We reverse the trial court, and remand the case for a damages hearing consistent with this opinion.

## FACTS

In June 1975, Passino was employed by the Amalia Lumber Company in Taos, New Mexico as a welder and pipe fitter. As part of his duties at Amalia, he was required to repair broken paddles, or slats, on a conveyor belt which removed sawdust from one of the buildings. The conveyor belt on which Passino was working was without the benefit of a guard, safety switch, or any other safety mechanism which would prevent the conveyor belt from being switched on while Passino was working on it. While Passino was making repairs to the conveyor belt in June 1975, the belt was inadvertently switched on, at which time he was caught in the sprockets driving the conveyor belt. He suffered multiple amputations of his toes.

The lumber mill was owned and operated by Amalia Lumber Company, the employer of Passino. However, Amalia had contracted with both defendants Cascade and Tim-

berman's for the design, purchase, delivery and set-up of a complete lumber mill.

After suffering his injuries, Passino initiated suit against both Timberman's and Cascade, alleging that both defendants were liable to Passino because of their respective negligence in failing to properly manufacture, design, implement and install a reasonably safe lumber mill with reasonably safe component parts. Liberty Mutual entered the suit to protect its reimbursement right under the Workmen's Compensation Act. Passino also alleged the strict liability in tort of both defendants in that the component parts of the lumber mill were defective. Finally, Passino alleged a cause of action for the breach of the implied warranty of merchantability in that the conveyor belt assembly was not fit for its ordinary purpose.

Timberman's answered the complaint and proceeded to defend the lawsuit. Cascade, however, totally failed to answer or otherwise plead to Passino's complaint, and a default order was entered on Passino's complaint on July 27, 1981. In his motion for a default order, Passino specifically requested, in accordance with prevailing law, that the amount of the damage award be determined in the same proceeding in which the issues of liability and damages pertaining to the remaining defendants would be tried. This language was incorporated into the order of the court. In the time subsequent to the entry of the default order against Cascade, plaintiff settled his differences with Timberman's and Liberty Mutual. An order was entered dismissing both defendants from the lawsuit, thus obviating the need for a full trial on the merits and on damages. After entry of the order dismissing the remaining defendants from the suit, plaintiff asked the court for an order setting an evidentiary hearing during which evidence would be presented as to the amount of damages to be assessed against Cascade. Notice of the evidentiary hearing was provided to Cascade so that Cascade could take whatever action it deemed necessary to protect its interests during that hearing. At that time, Cascade made its first appearance in the lawsuit. It filed a motion to set aside the default order or to allow it to present evidence regarding its claimed relative culpability in causing the injuries suffered by Passino.

In its order following the hearing, the court found that the default order entered against Cascade intended that Cascade's damages would be determined in accordance with the doctrine of pure comparative negligence. The court further found that the principles of comparative negligence in New Mexico required a determination of the apportionment of damages among all persons whose fault proximately caused the injuries to Passino, and that any other result was unfair and unjust, and not consistent with New Mexico law. It is this order and these findings from which plaintiff appeals. Cascade does not appeal the propriety of the grant of the default judgment.

## DISCUSSION

The issue raised in this case is whether defendant may present evidence on its culpability at a damages hearing after a default judgment has been entered against it and all other defendants have settled. We hold that defendant may not present such evidence.

It is uncontested that defendant Cascade defaulted in this case by failing to answer or otherwise plead. The law regarding the consequences of a default in this jurisdiction is clearly articulated in *Gallegos v. Franklin*, 89 N.M. 118, 547 P.2d 1160 (Ct. App.1976). Under *Gallegos*, once default judgment has been entered, liability is not an issue, and the allegations of the complaint become findings of fact. After its default, all that remained with regard to the liability of Cascade was a hearing on the dollar amount of damages suffered by Passino. This hearing was to be held at the same time as the hearing on liability and damages to be borne by the other defendants. In this case, the codefendants settled with plaintiff. Therefore, they are out of the case completely. Defendant now seeks to avoid the consequence of its default by litigating its culpability in the damages hearing. Defendant may not do so.

To allow such a result would negate the default and permit defendant to contest that which it has already admitted. *Gallegos* is clear and Cascade is bound by the law set forth in that case. The liability of all defendants but Cascade is completely settled. There is no apportionment of damages to litigate at the hearing on damages. Therefore, both *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981), and *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct.App.1982), are inapplicable in this case. It does not matter whether damages should be apportioned jointly and severally or purely when there is only one defendant paying damages.

Although the result may seem harsh, any other holding would seriously weaken, and could even abolish the efficacy of default judgments. That we are not prepared to do. By defaulting, defendant has waived its rights to the application of comparative negligence and the apportionment of damages under *Scott v. Rizzo* and *Bartlett.*

The order below is reversed. The case is remanded for a hearing solely on the amount of damages due plaintiff from Cascade.

IT IS SO ORDERED.

HENDLEY, C.J., concurs.

BIVINS, J., concurs specially.

BIVINS, Judge (specially concurring).

I concur with the majority except the statement, "[a]lthough the result may seem harsh, any other holding would seriously weaken, and could even abolish the efficacy of default judgments." That statement is correct in terms of apportioning fault following default, as was attempted here, but incorrect if interpreted to mean the trial court must award multiple recovery. While I am certain the majority does not intend multiple recovery since the case is remanded for hearing solely in "the amount of damages due plaintiff from Cascade," I deem it necessary to file this separate opinion not only to make clear my understanding but also to state why I believe the result is not harsh.

The issue was presented as one involving the principles of comparative fault when, in fact, we are only concerned with damages. Following default, plaintiff is entitled to an award from the defaulting defendant, but the question is whether plaintiff can recover more than once for his injuries.

Our appellate courts have held that an injured party may recover only once for his loss. *See Vaca v. Whitaker*, 86 N.M. 79, 519 P.2d 315 (Ct.App.1974) and cases cited at page 82, 519 P.2d 315 thereof; W. Prosser, *Law of Torts* § 48 (4th ed. 1971). Applying that principle here means that the trial court, at the damage hearing, first determines the total amount of plaintiff's damages. Since plaintiff can recover only once, the amount paid in settlement by other parties must be deducted. The difference then is what the defaulting defendant pays.

By following this procedure we have not compared fault, but we have allowed only one recovery. This permits plaintiff to have the benefit of the default and, at the same time, prevents the unfairness of double recovery which the trial court sought to avoid. Compare the result here with *Wilson v. Galt*, 100 N.M. 227, 668 P.2d 1104 (Ct.App.1983), which allows an injured party to retain the benefits of his bargain with a settling tort-feasor without reduction of the amount of damages ultimately determined.

On remand, the trial court should follow the procedure as outlined.